## ARONSTAM v. JAMES et al.

(District Court, E. D. New York. February 12, 1921. On Motion for Reargument, March 22, 1921.)

No. 658.

1. **Parties** ⊜⇒40(2)—**Stranger must have legitimate and proper interest in fund or property in question to intervene.**

Even in equity there is a fundamental rule that, before a stranger to a suit can be permitted to intervene, it must appear that he has a legitimate or proper interest in the fund or property in question, which he ought to be allowed to protect in that proceeding.

2. **War** ⊜⇒12—**Citizens of France could not intervene to protect judgment against person having property in hands of Alien Property Custodian.**

A citizen of France could not intervene in a suit brought under Act Cong. Oct. 6, 1917, known as the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.), to enforce a judgment against the owner of property in the hands of the Alien Property Custodian, even though he presented equities, the republic of France not having extended reciprocal rights to citizens of the United States, in view of section 9, as amended, subds. (e) and (f); and even after France extended reciprocal rights, intervention could not be successful, unless the debt arose with reference to the money held by the Alien Property Custodian which claim must be filed with him after notice of claim had been made in accordance with subdivision (a).

In Equity. Suit by Charles S. Aronstam against Elizabeth Pratt de Gasquet James and others, in which Pauline Andre de la Mettrie and others petition to intervene. Petition denied.

Pitkin & Rosensohn, of New York City, for plaintiff.
Frederick Geller, of New York City, for defendant James.
Leroy W. Ross, of Brooklyn, N. Y., for Alien Property Custodian.
J. Noble Hayes, of New York City, for petitioning creditors.

THOMAS, District Judge. After a motion to intervene had been granted by the court, without opinion, further affidavits were filed respecting the merits of the motion, and a written request was filed, asking for the opening of the order granted. Informally this request was granted, so that the matter is now before the court as though a motion to reargue had been granted, and the question is presented de novo, and arguments fully had respecting the merits of the motion to intervene.

This suit was brought under an act of Congress approved October 6, 1917, known as "Trading with the Enemy Act," to recover from Elizabeth Pratt de Gasquet James a debt alleged to be due the plaintiff out of property and money of the defendant James now in the custody of the Alien Property Custodian. The plaintiff is an attorney at law, a resident of Brooklyn, N. Y., and the defendant Madame James resides in Austria, and is an alien enemy as defined in the statute known as the "Trading with the Enemy Act."

From the pleadings in the case it appears that upwards of $12,-000 belonging to Madame James came into the possession of the Alien

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

273 F.—35

Property Custodian, and that he is now holding said property under the authority of the act of Congress, and that said funds are deposited in the Treasury of the United States in accordance with the provisions of section 12 of the act. It further appears that the plaintiff rendered professional services to Madame James at her request, and disbursed certain moneys extending over a period of three years, which services the plaintiff alleges were of the value of $12,000, and the amount of the disbursements was $1,911.38. A long bill of particulars accompanies the complaint, the details of which are, so far as this question is concerned, unimportant. It further appears that $2,564.97 has been paid, and that there was due $11,346.41, with interest from December 7, 1917.

On March 8, 1919, the plaintiff filed a verified notice of claim with the Alien Property Custodian, as required by section 1 of the act and on the form required by the Alien Property Custodian. Subsequent to this suit, and as the result of negotiations between the plaintiff, his counsel, and the attorneys representing Madame James, the claim of the plaintiff was compromised, and the defendant on July 6, 1920, confessed judgment in the sum of $5,000, without interest, which amount was accepted by the plaintiff in full, and a decree entered thereon for the sum of $5,000.

At this point, and on October 4, 1920, Pauline Andre de la Mettrie, George Pratt de Gasquet James, Madame Victoire Louise de Gasquet James, children of Madame James, the defendant, and all citizens of France, filed their petition to show cause why they should not be granted leave to intervene in this action as parties defendant, to protect or enforce certain judgments each had recovered against the defendant James. On December 20, 1920, acting through Coudert Bros., her counsel, Madame Victoire Louise de Gasquet James withdrew from the litigation, thus leaving the two first-mentioned children still insisting upon their rights to intervene.

From their petition it appears that, after considerable litigation to determine the amount due them from their mother, the defendant Madame James, "a final decree of the Surrogate's Court was duly made and entered on November 3, 1917, in accordance with the decision and order of the Court of Appeals, * * * making the amount payable to the several respective parties as their shares as follows: * * *. George Pratt de Gasquet James, $65,133.25; Pauline Andre de la Mettrie, $65,133.25—and awarding judgment against the said Elizabeth Pratt de Gasquet James accordingly," and that no part of said judgment, which was for the restoration of the property of the estate of the petitioners' father, has ever been paid.

It is to enforce and collect this judgment that the petitioners desire to intervene and to prevent a subsequent judgment creditor from receiving priority of payment. It is conceded that the petitioners are citizens of France, and that the republic of France does not extend reciprocal rights to citizens of the United States. The answer to the right of the petitioners to intervene is dependent upon the provisions of section 9 of the act as amended, subdivisions (e) and (f), 41 Stat. 978, and not under the rules provided in equity.

Under subdivision (a) of section 9 of the act it appears that the plaintiff has fully performed all the requirements of the law in order to give him a standing in the federal court for the purpose of enforcing his claim. Subdivisions (e) and (f) provide as follows:

(e) "No money or other property shall be returned nor any debt allowed under this section to any person who is a citizen or subject of any nation which was associated with the United States in the prosecution of the war, unless such nation in like case extends reciprocal rights to citizens of the United States; nor in any event shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917, and as to claimants other than citizens of the United States unless it arose with reference to the money or other property held by the Alien Property Custodian or Treasurer of the United States thereunder."

(f) "Except as herein provided, the money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, shall not be liable to lien, attachment, garnishment, trustee process, or execution, or subject to any order or decree of any court."

From these sections of the act it is apparent that out of a fund in the hands of the Alien Property Custodian taken from an alien enemy:

(1) No debt can be allowed to a citizen of France, unless France in like case extends reciprocal rights to citizens of the United States.

(2) No debt can be allowed to a citizen of France, unless it arose with reference to the money held by the Alien Property Custodian.

(3) The claim must be filed with the Alien Property Custodian after notice of claim has been made and filed in accordance with the provisions of subdivision (a) of the act.

(4) Except in the manner prescribed by the statute, the money in the hands of the Alien Property Custodian "shall not be liable to lien, attachment, garnishment, trustee process, or execution, or subject to any order or decree of any court."

From this it is very clear, even if the petition to intervene were granted, that under the conceded facts of the case the court would be without jurisdiction and powerless to enforce a decree issued in favor of the petitioners. We are, by the statute, foreclosed from discussing the equities of the case which have been urged at the argument. The question of whether an earlier judgment creditor will be prevented from securing priority over a later judgment creditor, even though the claim does present certain equities, cannot be said, in view of the express provisions of the statute, to be material.

[1, 2] The petitioners rely upon equity to enforce their right to intervene, and the discretion of the court is invoked in aid of the motion when courts of equity generally grant such motions where the necessary showing is made. But even in equity it is a fundamental rule that, before a stranger to a suit can be permitted to intervene in a suit between other parties, it must appear that he has a legitimate and proper interest in the fund or property in question, which he ought to be allowed to protect in that proceeding. A stranger who has no interest that could prevail over the right of the actual parties cannot intervene. In other words, even in equity, if the petitioners cannot enforce their claim in these proceedings, because of the provisions of the statute under which the suit was brought, they cannot be permitted to intervene. Upon any one of the conditions stated above, and

which are expressly imposed under the statute in clear and commanding language, the petition must be denied.

Recognizing the importance to the petitioners of this ruling, a very careful examination has been made of the many claims of the petitioners and the voluminous affidavits filed in support thereof. If it were not for the sections of the statute quoted supra, and if this were an ordinary action brought to recover a judgment out of a fund in the hands of a depository, the petition would be granted in accordance with the accepted practice in equity in such cases. And it was under an apprehension that such was the case that the motion was formerly granted, due regard for the provisions of the Trading with the Enemy Act not having been fully had by the court, or brought to its attention on argument when the former decision was made. Inasmuch as we are dealing with conditions created by the World War, when all equities were swept aside, and the Congress, in its wisdom, passed laws to meet such an exigency, it follows that the strict terms and provisions of the Trading with the Enemy Act must be followed.

As it is conceded that France extends no "reciprocal rights to the citizens of the United States" and that the petitioners are citizens of France, they could not prevail in the enforcement of their judgment against the fund in the hands of the Alien Property Custodian, even though their petition was granted. That being true, even equity rules would not allow them to intervene. Furthermore, under section 9, subd. (e), of the act, the court would be without jurisdiction to enforce their claims, even though the petition were granted.

For these reasons, the original order granting the petition must be reversed, and the petition to intervene denied; and it is so ordered.

Decree accordingly.

### On Motion for Reargument.

GARVIN, District Judge. This is an application for leave to reargue a motion for permission to intervene in this action, which was denied by Judge Thomas on February 12, 1921. The relief sought includes the opening of a judgment entered herein on or about February 14, 1921, in the event that leave to intervene is given. The application is made to me because of the request of Judge Thomas that any such motion be made before one of the judges of this district, and the parties have stipulated in open court that I consider the matter as though his decision had been my own.

The facts are set forth fully in the opinion filed when the motion was denied, by which George Pratt de Gasquet James and Pauline Andre de la Mettrie were refused leave to intervene on the following grounds:

(1) Because they are citizens of France, and the French republic does not extend reciprocal rights to citizens of the United States.

(2) Because of provisions of the Trading with the Enemy Act (under which the suit at bar was brought), section 9 of which reads in part as follows:

(e) "No money or other property shall be returned nor any debt allowed under this section to any person who is a citizen or subject of any nation

which was associated with the United States in the prosecution of the war, unless such nation in like case extends reciprocal rights to citizens of the United States; nor in any event shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917, and as to claimants other than citizens of the United States unless it arose with reference to the money or other property held by the Alien Property Custodian or Treasurer of the United States hereunder."

(f) "Except as herein provided, the money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, shall not be liable to lien, attachment, garnishment, trustee process, or execution, or subject to any order or decree of any court."

The opinion, supra, says:

"From these sections of the act it is apparent that out of a fund in the hands of the Alien Property Custodian taken from an alien enemy:

"(1) No debt can be allowed to a citizen of France unless France in like case extends reciprocal rights to citizens of the United States.

"(2) No debt can be allowed to a citizen of France unless it arose with reference to the money held by the Alien Property Custodian.

"(3) The claim must be filed with the Alien Property Custodian after notice of claim has been made and filed in accordance with the provisions of subdivision (a) of the act.

"(4) Except in the manner prescribed by the statute, the money in the hands of the Alien Property Custodian 'shall not be liable to lien, attachment, garnishment, trustee process, or execution, or subject to any order or decree of any court.'

"From this it is very clear, even if the petition to intervene were granted, that under the conceded facts of the case, the court would be without jurisdiction and powerless to enforce a decree issued in favor of the petitioners. We are, by the statute, foreclosed from discussing the equities of the case which have been urged at the argument. The question of whether an earlier judgment creditor will be prevented from securing priority over a later judgment creditor, even though the claim does present certain equities, cannot be said, in view of the express provisions of the statute, to be material.

"The petitioners rely upon equity to enforce their right to intervene, and the discretion of the court is invoked in aid of the motion when courts of equity generally grant such motions where the necessary showing is made. But even in equity it is a fundamental rule that, before a stranger to a suit can be permitted to intervene in a suit between other parties, it must appear that he has a legitimate and proper interest in the fund or property in question, which he ought to be allowed to protect in that proceeding. A stranger who has no interest that could prevail over the right of the actual parties cannot intervene. In other words, even in equity, if the petitioners cannot enforce their claim in these proceedings, because of the provisions of the statute under which the suit was brought, they cannot be permitted to intervene."

But it is now urged by the petitioners that some time since the French government granted reciprocal rights to American citizens in France. This appears to be true, and if that question alone were involved the petitioners might well have the relief they seek. But the other reasons advanced by the court for its conclusion, when the motion was denied, are persuasive, and in addition it should be noted that the act provides that a resident of France may not implead the Custodian in any court other than the Supreme Court of the District of Columbia (section 9 [as amended June 5, 1920]). To allow the intervention would make the intervener a plaintiff in the suit. The court has no power to indirectly nullify a clear requirement of the act.

After a very careful reading of the papers submitted on this appli-

cation, including the elaborate and learned brief of counsel for the petitioners, my conclusion that the relief sought should not be granted remains unaffected. The motion is denied, and, in view of the request of counsel for petitioners, the order will be settled on three days' notice.